IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY J. HAZLETT, | ) | Case No. 3:22-cv-34 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. Section 405(g). Plaintiff Timothy J. Hazlett ("Mr. Hazlett") appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). (ECF No. 13). For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

**I.   Procedural History**

On September 10, 2018, Mr. Hazlett protectively filed an application for SSI, alleging disability beginning on October 27, 2011. (Tr. 15).[1] Mr. Hazlett's claim was initially denied on

---

[1] Although Mr. Hazlett alleged a disability onset date of October 27, 2011, he was ineligible for SSI benefits until the date on which he applied for such benefits, meaning that the relevant period began on September 10, 2018, and the earliest that Mr. Hazlett could have obtained SSI benefits would have been October 2018. 20 C.F.R. § 416.202(g) (indicating that, in order to be eligible for SSI benefits, an individual must "file an application for SSI benefits"); *id.* § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application."); *Wheeler v. Comm'r of Soc. Sec.*, No. 16-CV-231-E, 2017 WL 4342027, at *1 n.1 (W.D. Pa. Sept. 29, 2017) ("As Defendant points out, the relevant period [for an SSI claim] actually begins on the application date."); *Azbell v. Saul*, No. 19-CV-01658, 2020 WL 2392444, at *1 (E.D. Pa. Apr. 24, 2020) ("In August of 2015, [the claimant applied for SSI. A]pplicants are ineligible for [SSI] until

January 22, 2019. (*Id.*). Thereafter, Mr. Hazlett requested a hearing before an Administrative Law Judge (the "ALJ"), which occurred on January 25, 2021, and was conducted by telephone due to the Coronavirus Disease 2019 Pandemic ("COVID-19"). (*Id.*). On February 25, 2021, the ALJ issued his decision, concluding that Mr. Hazlett was not disabled from September 10, 2018, through the date of the ALJ's decision. (Tr. 24). After Mr. Hazlett appealed to the Appeals Council, that body denied his request for review on January 11, 2022. (Tr. 1). Mr. Hazlett then appealed to this Court, where the parties' motions for summary judgment are now pending. (ECF Nos. 12, 14).

## II.   Issue Presented

1. Whether the ALJ failed to discuss or consider whether Mr. Hazlett's mental impairments were disabling for at least a 12-month period (or, at least, were more significant prior to demonstrated improvement), such that the residual functional capacity ("RFC") was not supported by substantial evidence because it failed to include all mental limitations supported by the record.

## III.   Discussion

### a.   Standard of Review[2]

---

the month after applying for benefits. So for benefits purposes the earliest date that [the claimant] could claim to be disabled … was September of 2015.").

Although the relevant period began on September 10, 2018, the Court notes that the ALJ in this case still "considered the complete medical history consistent with 20 CFR 416.912." (Tr. 15).

[2] The Court notes that the test for determining whether a person is disabled for purposes of qualifying for SSI "is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits." *Burns v. Barnhart*, 312 F.3d 113, 118–19 n.1 (3d Cir. 2002); *see also Pendergast v. Kijakazi*, No. 3:22-CV-00627, 2023 WL 5943140 (M.D. Pa. Sept. 12, 2023) (indicating throughout its opinion that the regulations pertaining to SSI and disability insurance benefits are the same). Therefore, the Court considers "case law developed under both SSI and social security disability benefits law." *Burns*, 312 F.3d at 119 n.1.

The Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014). "The Commissioner's findings of fact are binding if they are supported by substantial evidence." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Zirnsak*, 777 F.3d at 610 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). The Court "review[s] the record as a whole to determine whether substantial evidence supports a factual finding." *Id.* "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Finally, the Court "review[s] the ALJ's application of the law de novo." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007).

b.  **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). "First, the Commissioner considers whether the claimant is '[engaging in] substantial gainful activity.'" *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1520(a)(4)(i); *see also* 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaging in substantial gainful activity, then the claimant is not disabled. *Zirnsak*, 777 F.3d at 611. "Second, the Commissioner considers the severity of the claimant's impairment(s)." *Id.* If at step two "the claimant's impairment(s) are either not severe or do not meet the duration requirement, the

claimant is not disabled." *Id.* "Third, the Commissioner considers whether the claimant's impairment(s) meet or equal the requirements of one of the Commissioner's listed impairments." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)); *see also* 20 C.F.R. § 416.920(a)(4)(iii). If at step three "the claimant's impairment(s) meet [or equal] the requirements of a listed impairment, then the claimant is disabled." *Zirnsak*, 777 F.3d at 611.

If the claimant's impairments do not meet or equal a listed impairment "then the inquiry proceeds to the fourth step, where the Commissioner considers whether the claimant can return to [his] past work." *Id.* In determining whether the claimant can perform past relevant work, the claimant's RFC is assessed. *Id.* "A claimant's RFC measures 'the most he can do despite his limitations.'" *Id.* (quoting 20 C.F.R. § 404.1545(a)(1)) (cleaned up); *see also* 20 C.F.R. § 416.945(a). In assessing the claimant's RFC, the "Commissioner examines 'all of the relevant medical and other evidence' to make its RFC determination." *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(3)); *see also* 20 C.F.R. § 416.945(a)(3). If the claimant can perform past relevant work, then the claimant is found not to be disabled. *Zirnsak*, 777 F.3d at 611. The "claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith*, 631 F.3d at 634.

For claims filed on or after March 27, 2017, the regulations governing the types of opinions considered and the approach to evaluating opinions by ALJs were amended and the treating physician rule was eliminated. 20 C.F.R. §§ 404.1520c, 416.920c. Under the new, broadened regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a), 416.920c(a). Instead, the ALJ must

-4-

articulate how persuasive he or she finds medical opinions and prior administrative medical findings. *Id.* § 404.1520c(b), 416.920c(b). In considering a medical opinion or prior administrative medical finding, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors such as familiarity with other evidence in the claim. *Id.* § 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency. *Id.* § 404.1520c(a), 416.920c(a); *see also id.* § 404.1520c(b)(2), 416.920c(b)(2). Therefore, the ALJ must explain how he or she considered the supportability and consistency of a medical opinion or prior administrative medical finding but is not required to discuss how he or she considered the remaining factors. *Id.* § 404.1520c(b)(2), 416.290c(b)(2). When two or more medical opinions or prior administrative medical findings about the same issue are equally supported and consistent with the record on the same issue but are not exactly the same, the ALJ must articulate how the other factors contributed to his or her decision. *Id.* § 404.1520c(b)(3), 416.920c(b)(3). However, the ALJ is not required to disclose how he or she considered evidence from nonmedical sources. *Id.* § 404.1520c(d), 416.920c(d).

If the claimant meets his burden of proof at the first four steps, then the inquiry proceeds to step five, where "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak*, 777 F.3d at 612. To meet this burden, "the Commissioner must produce evidence that establishes that work exists in significant numbers in the national economy that [the claimant] can do." *Id.* (internal quotation marks and citation omitted). The Commissioner uses the RFC, as well as the testimony of vocational experts and specialists, to make this determination. *Id.* "[E]ntitlement to benefits is dependent upon

finding the claimant is incapable of performing work in the national economy." *Id.* (internal quotation marks and citation omitted).

### c. The ALJ's Evaluation of Mr. Hazlett

At step one, the ALJ found that Mr. Hazlett had not engaged in substantial gainful activity since September 10, 2018—the date on which he applied for SSI. (Tr. 17). At step two, the ALJ concluded that Mr. Hazlett had the following severe impairments: "major depressive disorder, anxiety disorder, diabetes mellitus, and diabetic neuropathy." (*Id.*). At step three, the ALJ held that Mr. Hazlett "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments within 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 18).

At step four, the ALJ determined that Mr. Hazlett had the RFC to:

> [P]erform light work as defined in 20 CFR 416.967(b) except his handling and fingering bilaterally is limited to a frequent basis; can perform simple, routine tasks; no more than occasional interaction with supervisors and the general public, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but with only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; and low stress work, which is defined as routine work with no more than occasional changes in the work.

(Tr. 19). In reaching this finding, the ALJ stated that he had "considered all symptoms and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (Tr. 19–20). The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." (Tr. 20). Ultimately, because Mr. Hazlett had no past relevant work, the ALJ progressed to step five. (Tr. 23).

At step five, the ALJ determined that, "[c]onsidering [Mr. Hazlett's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform[.]" (*Id.*). Accordingly, the ALJ found that Mr. Hazlett had not been under a disability from September 10, 2018, through the date of the ALJ's decision, which was rendered on February 25, 2021. (Tr. 24).

### d. Analysis

As Mr. Hazlett explains, his assignment of error before this Court is "succinct"—he contends that the "ALJ's failure to discuss or consider [the fact] that [his] impairments were disabling for at least a [12-month] period (or, at least, were more significant prior to demonstrated improvement) resulted in an RFC finding that [was] not supported by substantial evidence" because that finding "failed to include all the mental limitations assessed by [the Commissioner's] own expert and supported in the record generally." (ECF No. 13 at 5–6).

In further explaining his assignment of error, Mr. Hazlett concedes that his "anxiety and depression symptoms" were progressively improving between February 2020 and July 2020. (*Id.* at 8–9). Indeed, Mr. Hazlett explicitly states that he does not dispute the ALJ's finding that "his impairment improved in the course of treatment during 2020[.]" (*Id.* at 9–10).

Therefore, Mr. Hazlett's argument on appeal is that the ALJ failed to properly consider whether Mr. Hazlett had mental limitations that would have resulted in a different RFC during a twelve-month (or greater) period of time between September 10, 2018, and (approximately)

January 2020 (i.e., a closed period of disability). Mr. Hazlett cites two specific categories of evidence in support of this contention. (*Id.* at 6–14).[3]

For two reasons, which the Court explains in detail below, the Court deems this argument unavailing. First, as the Court noted above, the ALJ found that Mr. Hazlett was not disabled during the entire relevant period—from September 10, 2018, until the date of the ALJ's decision (February 25, 2021). (Tr. 24). Second, the Court holds that the ALJ properly addressed the categories of evidence cited by Mr. Hazlett, as well as the other evidence of record, for the entire

---

[3] Mr. Hazlett implicitly admits that he did not raise the issue of a closed period of disability to the ALJ. (ECF No. 13 at 9–10). Notably, there is precedent indicating that, when a claimant fails to raise the issue of a closed period of disability to the ALJ hearing his case, that claimant may not raise that issue on appeal to the district court. *Dilwara K. v. Comm'r of Soc. Sec.*, No. 20-CV-1557, 2022 WL 2357428, at *2 (D.N.J. June 30, 2022) ("This argument [regarding a closed period of disability] was not made to the ALJ, and it is therefore not a basis to disturb the ALJ's decision. Plaintiff did not request a closed period of disability at any point prior to the ALJ's 2018 decision. And a claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same.") (cleaned up) (collecting cases). Further, recent Supreme Court precedent may support a finding that a claimant who does not argue for a closed period of disability before an ALJ waives that issue on appeal to a district court. *Carr v. Saul*, 593 U.S. 83, 92 n.5 (2021) (stating that (1) in the context of an Appointments Clause challenge, the scales tipped against imposing an issue-exhaustion requirement, but (2) outside the "context of Appointments Clause challenges, such as in the sphere of routine objections to individual benefits determinations, the scales might tip differently").

For several reasons, Mr. Hazlett argues that the Court should decline to bar his claim of a closed period of disability on procedural grounds. (ECF No. 13 at 10–14). However, the Court need not resolve that issue in this case because a "'finding that the claimant has not been disabled during the entire period … necessarily precludes a finding that [he] was entitled to a closed period of disability.'" *Dilwara K.*, 2022 WL 2357428, at *3 (quoting *Ward v. Kijakazi*, No. 20-CV-1315, 2021 WL 3037711, at *2 (W.D. Pa. July 19, 2021)); *see also Philips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (explaining that the argument that the ALJ failed to consider a closed period of disability "ignores the ALJ's finding that [the claimant] had the [RFC] to perform a limited range of sedentary work from his alleged onset date of disability … and at all times thereafter" and stating that the record does not support a finding that a claimant is entitled to a closed period of disability where that claimant "cannot point to a period of twelve consecutive months in which he was disabled under the [Social Security] Act"). In this matter, the ALJ found that Mr. Hazlett was not disabled during the entire relevant period, and the Court holds that that decision was based on substantial evidence for that entire period, as the Court explains throughout this Memorandum Opinion. Therefore, regardless of whether Mr. Hazlett properly preserved his argument regarding a closed period of disability, the Court will affirm the Commissioner's decision, leading the Court to set aside the question of whether Mr. Hazlett's argument is foreclosed on procedural grounds alone.

relevant period. Therefore, the Court finds that the ALJ's RFC determination and decision as a whole, both of which took account of the entire relevant period, were based on substantial evidence for that entire period. *Bielat v. Kjiakazi*, No. 20-CV-349-E, 2022 WL 571938, at *2 (W.D. Pa. Feb. 24, 2022) (affirming the ALJ's decision where the Court deemed unavailing the plaintiff's argument that the ALJ "failed to adequately explain his consideration of medical opinion evidence[,]" which, according to the plaintiff, resulted in a deficient RFC). Accordingly, because Mr. Hazlett cannot point to a period of twelve consecutive months during which he was disabled under the law, *Phillips*, 91 F. App'x at 782, the Court will affirm the Commissioner's decision.

The Court now addresses in turn the two categories of evidence cited by Mr. Hazlett.

### 1. Dr. Ann Rene Miller's Conclusion That Mr. Hazlett Has Intermittent Explosive Disorder

#### i. The Parties' Arguments

Mr. Hazlett first points to Dr. Anne Rene Miller's ("Dr. Miller") conclusion that he had intermittent explosive disorder. (ECF No. 13 at 6–7). With respect to that diagnosis, Mr. Hazlett argues that it is supported by the record. (*Id.* at 7–8). For example, Mr. Hazlett states that Dr. Joseph Taveras ("Dr. Taveras") "conducted the consultative medical examination and noted [Mr. Hazlett] as having a history of being antisocial, with 'extreme anger,' as well as a learning impairment, mood swings, depression, and history of a suicide attempt." (*Id.* at 8). Further, Mr. Hazlett contends that Dr. Shelley Ross ("Dr. Ross"), the State agency psychologist, accepted Dr. Miller's diagnoses of intermittent explosive disorder. (*Id.* at 9).

Mr. Hazlett asserts that the ALJ erred because he rejected this evidence on the basis that Mr. Hazlett improved in 2020. (*Id.*). In other words, Mr. Hazlett's argument is that the ALJ's RFC

was deficient for the period between September 10, 2018, and (approximately) January 2020 because he disregarded, *based on later improvements*, evidence that Mr. Hazlett had intermittent explosive disorder during that timeframe.

In response, the Commissioner first contends that the ALJ considered the entire relevant period before him. (ECF No. 15 at 9). Relatedly, the Commissioner asserts that the ALJ did not solely consider Mr. Hazlett's improvement in formulating the RFC. (*Id.* at 12). Instead, the ALJ "considered the supportability and consistency of Dr. Miller's and Dr. Ross's limitations with the objective medical evidence and evidence from other medical and nonmedical sources, as required by the regulations[.]" (*Id.* at 12–13).

> ii. **The ALJ's Decision to Reject Dr. Miller and Dr. Ross's Finding That Mr. Hazlett Had Intermittent Explosive Disorder Was in Accordance with the Law**

At the outset, the Court notes that it reads the ALJ's decision as a whole. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Cordero v. Kijakazi*, 597 F. Supp. 3d 776, 786 (E.D. Pa. 2022).

Further, judicial review of an ALJ's evaluation of medical opinions is guided by several settled legal tenants:

> First, when presented with a disputed factual record, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

*Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 281 (M.D. Pa. 2022) (cleaned up).

Turning first to Dr. Miller's conclusion that Mr. Hazlett had intermittent explosive disorder, the ALJ did note, at one point in his decision, that Mr. Hazlett's mental condition had improved over time. (Tr. 22).[4] However, in the portion of the ALJ's decision *dealing directly with Dr. Miller's diagnosis of intermittent explosive disorder*, the ALJ reasoned that there was "no support for [Dr. Miller's] diagnosis of intermittent explosive disorder, which appears to be solely based on claimant's subjective complaints and statements at the one-time evaluation and is not documented anywhere else in the medical record." (Tr. 17). Upon review of the record, the ALJ's assessment is accurate—Dr. Miller offered no support for her conclusion of intermittent explosive disorder outside of Mr. Hazlett's own statements. (Tr. 479–89). Indeed, although Dr. Miller did note that she had reviewed certain records, she did not explain how, if at all, those records factored into her conclusion that Mr. Hazlett had intermittent explosive disorder. (Tr. 479).

Further, in another portion of his decision, the ALJ noted that, at the time that Dr. Miller examined Mr. Hazlett, he was "reported to be cooperative, had a fair manner of relating, made appropriate eye contact, etc." (Tr. 22). Once again, the ALJ's statement is an accurate recitation of Dr. Miller's notes. (Tr. 481).

Therefore, because the ALJ rejected Dr. Miller's finding of intermittent explosive disorder based on or in light of the following facts: (1) Dr. Miller had only evaluated Mr. Hazlett one time, (2) her conclusion appeared to be based solely on his subjective statements and was otherwise without support in the record, and (3) her conclusion was inconsistent with (at least certain) aspects of her own evaluation of Mr. Hazlett, the Court finds that the ALJ acted in accordance

---

[4] The Court discusses the ALJ's mention of Mr. Hazlett's improvement in greater detail below. *See infra* Section III.d.2 n.8.

with the law in rejecting Dr. Miller's finding of intermittent explosive disorder. *Roderick v. Comm'r of Soc. Sec.*, 322 F. App'x 117, 121 (3d Cir. 2009) ("The examining psychologist's diagnoses also were based on [the claimant's] self-reports, which were contradicted by the psychologist's own observations. For the time period in question there is no medical evidence to support a finding that [the claimant] is disabled.") (citation omitted); *Mercado*, 629 F. Supp. 3d at 284 (finding that an ALJ properly rejected a medical opinion where that opinion was: (1) inconsistent with the clinician's physical examination, (2) supported only by the claimant's subjective reports, and (3) based upon only three prior appointments); 20 C.F.R. § 416.920c(c)(1)–(5).

Turning to Dr. Ross's finding that Mr. Hazlett had intermittent explosive disorder,[5] the ALJ wrote that that finding appeared to be based on Dr. Miller's report, "which was unsubstantiated." (Tr. 17). Having reviewed Dr. Ross's report, she did refer to Dr. Miller's report, and she did not offer any other specific articulation regarding her finding that Mr. Hazlett had intermittent explosive disorder. (Tr. 76–91). Therefore, because: (1) the Court has found that the ALJ properly rejected Dr. Miller's finding of intermittent explosive disorder, (2) the ALJ rejected Dr. Ross's finding of intermittent explosive disorder because it appeared to be based on Dr. Miller's finding, and (3) Dr. Ross's finding does in fact appear to be predicated upon Dr. Miller's properly-rejected finding, the Court holds that the ALJ did not err in rejecting Dr. Ross's conclusion on this issue. *Bielat*, 2022 WL 571938, at *1 n.3 (finding that the ALJ's consideration of a doctor's opinion was adequate where the ALJ "neither ignored evidence nor appeared to reject evidence for an incorrect reason").

---

[5] Dr. Ross indicated that Mr. Hazlet had "Personality and Impulse-Control Disorders[.]" (Tr. 85). In his Brief, Mr. Hazlett appears to equate this finding with one of intermittent explosive disorder. (ECF No. 13 at 9 n.5).

Accordingly, having considered Mr. Hazlett's arguments on this score, the Court finds that he has failed to show that the ALJ erred in rejecting the finding that he had intermittent explosive disorder at any point during the relevant time period (September 10, 2018, until the date of the ALJ's decision).[6] *Roderick*, 322 F. App'x at 121–22; *Mercado*, 629 F. Supp. 3d at 284; *Bielat*, 2022 WL 571938, at *1 n.3.

### 2. Dr. Miller and Dr. Ross's Conclusion That Mr. Hazlett Was Markedly Limited in His Ability to Interact/Deal With the Public

Mr. Hazlett next refers the Court to Dr. Miller's conclusion that he was markedly limited "in his ability to interact with the public" and Dr. Ross's companion finding that he was "markedly limited in his ability to deal with the public." (ECF No. 13 at 7). Mr. Hazlett argues that the ALJ erred in failing to include this marked limitation in his RFC for similar reasons as Dr. Miller's diagnosis of intermittent explosive disorder. (*Id.* at 6–10).

As the Court previously noted, the ALJ did indicate, relative to Mr. Hazlett's mental impairments, that he had been improving as of early 2020. (Tr. 22). However, when directly addressing the issue of Dr. Miller's finding that Mr. Hazlett was markedly limited in his ability

---

[6] Mr. Hazlett does aver that Dr. Taveras "noted [him] as having a history of being antisocial, with 'extreme anger,' as well as a learning impairment, mood swings, depression, and history of a suicide attempt." (ECF No. 13 at 8). However, the ALJ took those findings into account in his decision, and the RFC that the ALJ formulated included significant mental limitations. (Tr. 19, 21). Further, Mr. Hazlett offers no argument as to how Dr. Taveras's findings should have led the ALJ to alter his RFC, or how those findings support the conclusion that Mr. Hazlett had intermittent explosive disorder. (*See* ECF No. 13). Therefore, the Court cannot find that the ALJ erred relative to his treatment of Dr. Taveras's findings.

Relatedly, Mr. Hazlett points to a description of him from December 2019 indicating that he "'has anger issues. He blows up and verbally lashes out.'" (ECF No. 13 at 8) (quoting Tr. 490–91, 506, 591, 582, 579, 553–54, 570). However, Mr. Hazlett again offers no argument as to how this description should have led the ALJ to alter his RFC, or how this description should have led the ALJ to find that he had intermittent explosive disorder. Further, the Court reiterates that the ALJ did consider in his decision Dr. Taveras's finding that Mr. Hazlett had extreme anger. Accordingly, the Court cannot find that the ALJ erred relative to this description from December 2019.

to interact appropriately with the public, the ALJ wrote that: (1) Dr. Miller's finding was based solely on Mr. Hazlett's subjective statements, (2) Mr. Hazlett had indicated that his supports were his friend and his mom, (3) Mr. Hazlett was reported to be "cooperative, had a fair manner of relating, made appropriate eye contact, etc.[,]" at the examination with Dr. Miller, and (4) Mr. Hazlett reported that he shopped in stores. (*Id.*). For all of these reasons, the ALJ disregarded Dr. Miller's finding of a marked limitation in Mr. Hazlett's ability to interact appropriately with the pubic. (*Id.*).

The Court has reviewed the portions of the record cited by the ALJ, and the Court finds that all of the ALJ's statements regarding the record are correct. (Tr. 316, 479–89, 504). Further, the ALJ's reasons for rejecting Dr. Miller's conclusion constitute events occurring or statements made between September 10, 2018, and (approximately) January 2020. (Tr. 316, 479–89, 504). Therefore, because the ALJ rejected Dr. Miller's finding of a marked limitation for legally valid reasons, the Court finds that the ALJ acted in accordance with the law relative to that purported limitation. *Roderick*, 322 F. App'x at 121; *Mercado*, 629 F. Supp. 3d at 284; *Bielat*, 2022 WL 571938, at *1 n.3; 20 C.F.R. § 416.920c(c)(1)–(5).

Turning to Dr. Ross's conclusion that Mr. Hazlett was markedly limited in his ability to interact appropriately with the general public, the ALJ found this assessment "partially persuasive" because it was an "overestimate of the severity of the limitation in apparent reliance upon" Dr. Miller's findings. (Tr. 23). As before, having reviewed Dr. Ross's report, the Court notes that she did refer to Dr. Miller's report, and the Court further notes that Dr. Ross did not offer any other specific articulation regarding her finding that Mr. Hazlett had this marked limitation. (Tr. 76–91). Therefore, because (1) the Court has found that the ALJ properly disregarded Dr.

-14-

Miller's finding on this score and (2) Dr. Ross's finding on this score does in fact appear to have been based on Dr. Miller's properly-rejected finding, the Court holds that the ALJ did not err in rejecting Dr. Ross's conclusion regarding Mr. Hazlett being markedly limited in his ability to interact appropriately with the general public. *Bielat*, 2022 WL 571938, at *1 n.3 (finding that the ALJ's consideration of a doctor's opinion was adequate where the ALJ "neither ignored evidence nor appeared to reject evidence for an incorrect reason").

Accordingly, having considered Mr. Hazlett's arguments on this issue, the Court finds that he has failed to show that the ALJ erred in rejecting the conclusion that he had a marked limitation in his ability to interact appropriately with the public at any point during the relevant time period (September 10, 2018, until the date of the ALJ's decision).[7] *Roderick*, 322 F. App'x at 121–22; *Mercado*, 629 F. Supp. 3d at 284; *Bielat*, 2022 WL 571938, at *1 n.3.

Before concluding, the Court observes that Mr. Hazlett points to other pieces of evidence regarding his mental limitations. (*See* ECF No. 13). However, other than the issues that the Court addresses in this Memorandum Opinion, he does not argue that the ALJ failed to consider any of the other evidence that he cites, and he offers no other specific assignments of error. (*See id.*).

For its part, the Court notes that the ALJ's opinion: (1) was fairly extensive, (2) addressed the evidence now cited by Mr. Hazlett in direct support of his assignment of error, (3) found that Mr. Hazlett had major depressive disorder and anxiety disorder, (4) included significant mental limitations in Mr. Hazlett's RFC for the period between September 10, 2018, and the date of the ALJ's decision, (5) appears to have concluded that Mr. Hazlett was markedly limited in his ability

---

[7] The Court notes that its previous discussion of Dr. Taveras's opinions and the description of Mr. Hazlett from December 2019 applies with the same force in this context. *See supra* Section III.d.1.ii n.6.

to make judgments on complex work-related decisions, and (6) appears to have considered and appropriately applied all relevant medical evidence. (Tr. 15–24). Therefore, in light of the foregoing, Mr. Hazlett is fundamentally "requesting that this Court re-weigh the evidence. This [the Court] may not do." *Mercado*, 629 F. Supp. 3d at 284; *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, [the court] may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder.") (cleaned up).

Accordingly, the Court holds that: (1) the ALJ considered the entire relevant time period, from September 10, 2018, until the date of his decision, (2) substantial evidence supported his RFC for the entire relevant period, and (3) substantial evidence supported his conclusion that Mr. Hazlett was not disabled for any twelve-month window of time during the relevant period.[8]

---

[8] The Court briefly offers two concluding notes.

First, the Court reiterates that the ALJ "considered the complete medical history consistent with 20 CFR 416.912." (Tr. 15). That provision provides, among other things, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that the development of an earlier period is necessary …" 20 C.F.R. § 416.912(b)(1). In this case, Mr. Hazlett has advanced no argument, (ECF No. 13), and the Court sees no reason, why the ALJ's weighing of the relevant medical evidence pertaining to the relevant period before September 10, 2018, was in error. Rather, the Court finds that substantial evidence supports the ALJ's decision in all respects.

Second, Mr. Hazlett contends that the ALJ's RFC in this case was "entirely static, finding the same mental limitations prior to his improvement as after[.]" (*Id.* at 13). While the ALJ did take into account Mr. Hazlett's improvement in 2020 in the course of his decision, (Tr. 22), the Court notes that the ALJ did so by making the following statement: "With regard to [Mr. Hazlett's] mental impairments … [h]is treatment has been conservative in nature, consisting of psychotherapy and psychotropic medication, which has improved his condition with him denying having any side effects of medication[.]" (*Id.*). In other words, the ALJ's statement about Mr. Hazlett's improvement appears to come in the context of a statement regarding Mr. Hazlett's condition *generally* throughout the relevant period—that is, that it was *always* a condition requiring only conservative treatment. Further, the statement about Mr. Hazlett's improvement was a very minor component of the ALJ's decision, and the matter of his improvement did not come up in the portions of the ALJ's decision dealing directly with the issues of intermittent explosive disorder or a marked

IV.     **Conclusion**

Based on the foregoing, the Court will affirm the Commissioner's decision. An appropriate order follows.

---

limitation in interacting with the public. (Tr. 15–24). Finally, and fundamentally, Mr. Hazlett has failed to show that the ALJ erred in his consideration of any of the record evidence in this matter. Therefore, Mr. Hazlett has not demonstrated that the RFC for any point in time would have differed *if he had not improved in early 2020.* The Court has every indication that the RFC in this case was based on Mr. Hazlett's impairments (as supported by the record evidence) at their worst during the legally operative period. Accordingly, the Court reiterates its finding that the ALJ's decision was supported by substantial evidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY J. HAZLETT, | ) | Case No. 3:22-cv-34 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 30th day of September, 2024, upon consideration of Plaintiff's Motion for Summary Judgment, (ECF No. 12), and Defendant's Motion for Summary Judgment, (ECF No. 14), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED. IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**